UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEREMY S. PENCE, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:17-cv-00090-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill, Acting Commissioner of SSA*, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jeremy S. Pence appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Pence applied for DIB and SSI in April 2015, alleging disability as of May 21, 2014. (DE 12 Administrative Record ("AR") 210-11). The Commissioner denied Pence's application initially and upon reconsideration. (AR 155-71). A hearing was held on March 7, 2016 (AR 42-94), before Administrative Law Judge Stephanie Katich (the "ALJ"), at which Pence, who appeared *pro se*, and a vocational expert, Amy Kutschbach (the "VE"), testified. (AR 42-94).

---

[1] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

On August 5, 2016, the ALJ rendered an unfavorable decision to Pence, concluding that he was not disabled because despite the limitations caused by his impairments he could perform a significant number of unskilled, light exertional jobs in the economy. (AR 24-35). The Appeals Council denied Pence's request for review (AR 1-7, 13-15), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Pence filed a complaint with this Court on March 11, 2017, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Pence argues that: (1) the ALJ failed to properly consider and weigh the medical opinion evidence; (2) the ALJ's evaluation of his mental impairments and Listing 12.04, the listing for depressive, bipolar, and related disorders, is not supported by substantial evidence; and (3) the ALJ failed to properly evaluate the credibility of his symptom testimony and consider the combination of his impairments. (DE 15 at 13-25).

At the time of the ALJ's decision, Pence was 38 years old (AR 35, 210); had obtained his GED (AR 231); and had past work experience as a hand bander, industrial truck operator, and merchandise displayer (AR 316). In his application, Pence alleged disability due to a car accident, anxiety, a back injury, a hip injury, and life-long depression. (AR 230).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the

claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On August 5, 2016, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 24-35). At step one of the five-step analysis, the ALJ found that Pence had not engaged in substantial gainful activity since his alleged onset date. (AR 26). At step two, the ALJ found that Pence had the following severe impairments: fibromyalgia, chronic pain syndrome, degenerative disc disease of the lumbar spine, and depression with mood incongruent psychotic features. (AR 27). At step three, the ALJ concluded that Pence did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 27-29).

Before proceeding to step four, the ALJ determined that Pence's symptom testimony was

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

4

not entirely consistent with the medical evidence and other evidence of record (AR 30), and the ALJ assigned him the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except that the claimant can occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; and he should avoid concentrated exposure to vibration, and hazards such as wetness, slippery or uneven surfaces, unprotected hazards and heights. The claimant can understand, remember and carry out simple instructions; he can make judgments on simple work related decisions; he can respond appropriately to occasional interactions with coworkers, supervisors and the general public; he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

(AR 29). Based on the RFC and the VE's testimony, the ALJ concluded at step four that Pence was unable to perform any of his past relevant work. (AR 34). At step five, the ALJ found that despite the limitations caused by his impairments, Pence could perform a significant number of unskilled, light exertional jobs in the economy, including a repack room worker, a stock checker, and an office helper. (AR 35). Therefore, Pence's applications for DIB and SSI were denied. (AR 35).

### C. The Medical Source Opinions

Pence argues that the ALJ failed to properly evaluate certain medical source opinions of record: the opinions of Ceola Berry, Ph.D., and Paula Neuman, Ed.D., Psy.D., both examining psychologists for the state agency; Thomas Lazoff, M.D., a treating physical medicine specialist; Charles MacLean, M.D., a treating physician at Redimed; and Morgan Langhofer, M.D., an examining physician for the state agency. Pence's argument has merit in part, necessitating a remand of the Commissioner's final decision.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to

the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing 20 C.F.R. § 404.1527(c)(2)). In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner applies the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Books*, 91 F.3d at 979. The Commissioner must always give "good reasons" for the weight ultimately applied to the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Clifford*, 227 F.3d at 870.

The ALJ must "evaluate every medical opinion [she] receive[s]." 20 C.F.R. §§ 404.1527(c), 416.927(c). Each medical opinion, other than a treating physician's opinion entitled to controlling weight, must be evaluated pursuant to factors articulated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to determine the proper weight to apply to it. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see generally White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005). Whether the doctor examined the claimant is one of the factors considered when weighing

opinions under this regulation. *Payne v. Colvin*, No. 4:15-CV-43-JVB-PRC, 2017 WL 655863, at *2 (N.D. Ind. Feb. 17, 2107) (citing 20 C.F.R. § 404.1527(c)(1)). "Medical opinions from examining sources are generally given more weight than those from non-examining sources." *Id.* (citing 20 C.F.R. § 404.1527(c)(1)). The Seventh Circuit Court of Appeals has stated that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted); *see Young v. Barnhart*, 362 F.3d 995, 1001-02 (7th Cir. 2004) (noting that the circumstance presented was "not a case where the ALJ improperly rejected an examining physician's opinion in favor of a non-examining physician's decision").

  1. <u>Dr. Berry</u>

Dr. Berry, an examining psychologist, opined in March 2016 that Pence had moderate limitations in understanding and remembering simple instructions, but marked limitations in carrying out simple instructions; marked limitations in understanding, remembering, and carrying out complex instructions; extreme limitations in making judgments on complex work-related decisions; moderate limitations in interacting with co-workers and adjusting to changes in the work setting; and that his ability to work would be primarily affected by his perceived medical conditions and his mood states. (AR 538-43). The ALJ gave "partial weight" to Dr. Berry's opinion, explaining that on the one hand, Dr. Berry "personally examined the claimant and has knowledge of the disability program," but on the other hand, "the limitations regarding the claimant's ability to understand, remember, and carry out simple instructions is inconsistent with [Dr. Berry's] examination findings showing no significant problems with concentration,

7

short-term memory, or mental calculations." (AR 33).

Pence argues that the lack of significant problems with concentration, short-term memory, and mental calculations during a one-time examination is not a good reason to reject Dr. Berry's opinion. Pence emphasizes that Dr. Berry also reviewed Pence's "medical/psychiatric file," and that Dr. Berry's opinion was the most recent opinion of record concerning Pence's mental functioning, and as such, it was entitled to more weight. (AR 538).

Here, the ALJ penned a paragraph on Dr. Berry's opinion and incorporated some of Dr. Berry's findings in the RFC determination. (AR 29, 33). In that regard, the ALJ limited Pence to understanding, remembering, and carrying out simple instructions; making judgments on only simple work-related decisions; no more than occasional interactions with co-workers, supervisors, and the general public; and dealing with no more than routine changes in a routine work setting. (AR 29). The ALJ rejected Dr. Berry's opinion on Pence's ability to understand, remember, and carry-out simple instructions, viewing this limitation as patently inconsistent with Dr. Berry's exam findings showing no significant problems with concentration, short-term memory, and mental calculations. (AR 33, 539).

In light of Dr. Berry's exam findings, the Court cannot fault the ALJ for viewing Dr. Berry's opinion as internally inconsistent, and as such, worthy of less weight. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (noting that an ALJ can discount a physician's opinion if it is internally inconsistent); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent). While Pence suggests that Dr. Berry may have based her opinion concerning his marked limitations in carrying out simple tasks on other evidence in his file, Dr. Berry does not cite to any such evidence in her opinion, leaving her

8

findings unsupported in this regard. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Accordingly, the ALJ provided good reasons for not incorporating this portion of Dr. Berry's opinion into Pence's RFC, which is a determination reserved to the Commissioner. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (observing that in assigning an RFC, "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" (citation omitted)); 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). Therefore, the ALJ's assigning of "partial weight" to Dr. Berry's opinion is supported by substantial evidence.

2. Dr. Neuman

Dr. Neuman, an examining psychologist, opined in April 2015 that Pence's ability to understand, remember, and carry out simple instructions in a sustained manner "is impaired"; his ability to interact appropriately with coworkers "is impaired"; his thought process is not logical and coherent; and his mental health conditions result in a "moderate impairment." (AR 410). The ALJ gave Dr. Neuman's opinion "limited weight" because she found it inconsistent with Pence's limited treatment for depression, that Pence had worked in the past despite his depression; and that Dr. Berry's exam revealed no significant problems in concentration, memory, abstracting ability, or general knowledge. (AR 33).

Pence argues that the ALJ improperly discounted Dr. Neuman's opinion, asserting that the ALJ failed to properly consider Pence's inability to afford treatment. However, contrary to Pence's assertion, the ALJ expressly acknowledged Pence's financial limitations in her decision,

9

stating: "Although the claimant reported financial constraints as the reason he has failed to receive mental health treatment, there is evidence that he received treatment from free clinics for his physical impairments, but did not seek similar low-cost alternatives for mental health treatment." (AR 31). Therefore, the ALJ's consideration of Pence's lack of treatment is reasonable. *See Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (acknowledging that an ALJ is entitled to make reasonable inferences from the evidence before him).

Similarly, the ALJ observed that while Pence visited the emergency room for his physical complaints, Pence admitted that he never went to the emergency room for his depression or anxiety. (AR 31, 63-64). Pence disagrees with this reason for discounting his credibility, asserting that several emergency room records note his suicidal thoughts. (DE 15 at 21 (citing AR 583, 600, 616)). But the mention of suicidal thoughts in these treatment records is in the "patient problems" section, akin to a patient's history; apparently, no provider found it necessary to further address Pence's mental health at the time. (AR 583, 600, 616). Rather, Pence visited the emergency room for various physical complaints. (AR 580, 614). As such, the ALJ's observation that Pence's depression and anxiety never caused him to visit the emergency room is accurate.

Pence also argues that the ALJ erred by discounting the severity of his symptom testimony based on his ability to work in the past despite his depression. In that regard, the ALJ stated: "Furthermore, the claimant admitted that he has had depression since he was a teenager, so he has previously been capable of earning substantial gainful activity despite symptoms of depression." (AR 31). Pence argues that the ALJ failed to consider that his mental symptoms had worsened in the last two years in combination with his experiencing physical problems.

However, Pence's argument does not square with his lack of mental health treatment in the most recent five or six years (AR 56), the benign psychiatric findings documented at the recent emergency room visits (*see* AR 352, 481, 497, 550, 617, 656 (all documenting normal mood and affect)), and Dr. Berry's exam showing no significant problems in concentration, memory, abstracting ability, or general knowledge (AR 538-39). As such, the ALJ's assigning of "little weight" to Dr. Neuman's opinion is also supported by substantial evidence.

    3.    Dr. Lazoff

Dr. Lazoff, a treating physical medicine specialist, opined in February 2015 that Pence could lift and carry 25 pounds occasionally in a workday; squat and bend occasionally; stand for one hour at a time and four hours total; walk for 10 minutes at a time and four hours total; and sit for one hour at a time, then change position for 10 to 15 minutes before returning to sitting, and sit for eight hours total. (AR 320). Dr. Lazoff also indicated that Pence qualified for a two-percent whole person impairment as it relates to his lumbosacral spine. (AR 320).

The ALJ assigned "great weight" to Dr. Lazoff's opinion that Pence was limited to lifting 25 pounds occasionally and had a two-percent whole person impairment. (AR 32). In doing so, the ALJ explained that Dr. Lazoff had been treating Pence since July 2014 and that the limitations he assigned were consistent with his exam findings showing normal strength and sensation and a conservative course of treatment. (AR 32).

Pence, however, contends that the ALJ improperly evaluated or "cherry-picked" Dr. Lazoff's opinion by assigning "great weight" to some of his restrictions, while at the same time ignoring other restrictions that contradicted her conclusion. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

11

of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). That is, "[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citation omitted)). "The ALJ must evaluate the record fairly." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Pence's assertion of error as to Dr. Lazoff's opinion has merit, as the ALJ erred by failing to mention, much less discuss, the portion of Dr. Lazoff's opinion pertaining to Pence's limited ability to stand, walk, and sit. This is important evidence because it comes from Pence's treating specialist and is inconsistent with the RFC assigned by the ALJ for light work. When important evidence is left unmentioned by the ALJ, the Court is "left to wonder whether the [evidence] was even considered." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). This oversight or cherry-picking of the opinion of Dr. Lazoff, Pence's treating specialist, is a material error that must be remedied upon remand. *See Huber v. Berryhill*, ---- F. App'x ----, 2018 WL 2084793, at *3 (7th Cir. May 4, 2018) (remanding case where the ALJ assigned an RFC for light work and failed to consider a consulting examiner's opinion that the claimant had trouble standing and walking). Therefore, the Commissioner's final decision will be remanded for purposes of reconsidering the opinion of Dr. Lazoff, together with Pence's physical RFC.

4. Dr. MacLean

Dr. MacLean, a treating physician at Redimed, opined in September 2014 that Pence was able to "return to work with no restrictions." (AR 447). However, in that same note, Dr. MacLean limited Pence to work that involves lifting no more than 10 pounds; "limited hours" of

12

standing or walking; and no bending, squatting, kneel, climbing, pushing, pulling, working aloft, working around moving machinery, or driving a commercial vehicle. (AR 447).

As with Dr. Lazoff's opinion, the ALJ seems to have ignored, mischaracterized, or "cherry-picked" a material portion of Dr. MacLean's opinion. When discussing Dr. MacLean's opinion, the ALJ stated: "In fact, on September 27, 2014, treating physician Charles Leslie MacLean, M.D., indicated that the claimant can return to work with no restrictions." (AR 32). The ALJ then gave Dr. MacLean's opinion "partial weight" for the reason that Dr. MacLean's exam did reveal bilateral lumbar and sacral muscle spasm, stiff gait, and decreased lumbar flexion, which the ALJ thought merited some restrictions. (AR 32).

The ALJ erred, however, by never mentioning, much less discussing, the type of work to which Dr. MacLean opined that Pence could return. This is a material error because the work described by Dr. MacLean is inconsistent with the RFC assigned by the ALJ for light work. As a result, the ALJ's error as to Dr. MacLean's opinion must also be remedied upon remand. *See Huber*, 2018 WL 2084793, at *3.

    5.    <u>Dr. Langhofer</u>

Dr. Langhofer, an examining physician, opined in May 2015 that Pence could walk one-half of a block, stand for 15 minutes, climb five stairs, and lift 10 pounds with one arm and 20 pounds with both arms. (AR 675). Dr. Langhofer wrote that Pence walked with a stooped posture and slow speed, had an antalgic gait, and had decreased sustainability and stability. (AR 677). He could squat and walk on heels, toes, and tandem walk while holding on to a wall for support; had a normal straight-leg raise in both sitting and supine; and could independently get on and off an examining table. (AR 677). He had 4/5 strength in his right upper and lower

13

extremities and 5/5 strength elsewhere; normal sensation; and 60 degrees of forward lumbar flexion and normal range of motion elsewhere. (AR 677). Dr. Langhofer concluded that Pence's injuries to his discs and hips that arose from his car accident caused him "[s]evere daily interference with activity/mobility" and that were "[l]ikely chronic [with] significant limitations." (AR 680).

The ALJ expressly considered Dr. Langhofer's exam findings, summarizing that Pence had a stooped posture, stiff gait, slow speed, and decreased stability; that Pence could get up and down from the exam table without assistance, walk on heels and toes, and squat; that he had a normal straight-leg raising test; and that his overall strength, sensation, and range of motion "were generally unremarkable." (AR 31 (citing AR 675)). The ALJ did not, however, mention Dr. Langhofer's opinion that Pence experienced injuries that caused "[s]evere daily interference with activity/mobility" and that were "[l]ikely chronic [with] significant limitations." (AR 680).

Pence argues that the ALJ mischaracterized Dr. Langhofer's exam findings by describing them as "generally unremarkable." In support, Pence points to his 4/5 strength in his right upper and lower extremities; his 60 degrees of forward lumbar flexion, where 90 degrees is normal; and that his gait maneuvers were performed while holding onto a wall. Pence's nitpicks, however, are unpersuasive, as the ALJ's summary of Dr. Langhofer's exam findings as "generally unremarkable" is a reasonable characterization of this evidence. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (In reviewing an ALJ's decision, the Court will "give the opinion a commonsensical reading rather than nitpicking at it." (citation omitted)).

Having said that, because this case is already being remanded for reconsideration of the opinions of Dr. Lazoff and Dr. MacLean, together with Pence's physical RFC, the ALJ should

also address upon remand Dr. Langhofer's opinion that Pence experienced injuries causing "[s]evere daily interference with activity/mobility" and that were "[l]ikely chronic [with] significant limitations." (AR 680). The ALJ should also weigh Dr. Langhofer's opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) and minimally articulate the weight applied to Dr. Langhofer's opinion, as the ALJ failed to do so in the current decision. (*See* AR 31).

In sum, the ALJ's decision will be remanded so that the ALJ may reconsider the opinions of Dr. Lazoff, Dr. MacLean, and Dr. Langhofer in their entirety and minimally articulate her rationale for the weight assigned to these medical source opinions. The ALJ is also to revisit the physical RFC assigned to Pence in light of her reconsideration of these medical source opinions.[3]

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Pence and against the Commissioner.

SO ORDERED. Entered this 16th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[3] Because a remand is warranted for reconsideration of the opinions of Dr. Lazoff, Dr. MacLean, and Dr. Langhofer, the Court need not reach Pence's remaining arguments. Having said that, the Court has briefly reviewed Pence's argument challenging the ALJ's consideration of Listing 12.04 at step three, in which Pence argues that he has "marked" limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. However, even in a brief review, it is apparent that the record does not support "marked" limitations in Pence's activities of daily living or social functioning, and thus, Pence is unable to establish marked limitations in at least two of the four "B" criteria as required by Listing 12.04. *See* 20 C.F.R. § 404, Supt. P, App'x 1, 12.04. Likewise, Pence's argument challenging the ALJ's consideration of his symptom testimony appears thin because as discussed *supra*, the ALJ adequately considered both Pence's financial situation in the context of his lack of treatment and the cumulative effects of Pence's various impairments.